IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra M. Rose,<br><br>  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br><br>  Defendant. | No. CV 10-120-TUC-FRZ (JCG)<br><br>**REPORT & RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the court is an opening brief filed by Plaintiff on August 3, 2010 (Doc. No. 13), a response brief filed by Defendant on October 4, 2010 (Doc. No. 16) and a reply filed by Plaintiff on October 19, 2010. (Doc. 17.)

The Magistrate Judge recommends that the District Court, after its independent review, remand for further proceedings consistent with this opinion.

## **BACKGROUND**

**1.  Procedural History**

In July, 1997, Plaintiff filed an application for disability insurance benefits, alleging a disability that began on July 7, 1997. (AR 192-194; 343.) On October 2, 1997, the Social Security Administration ("SSA") found Plaintiff to be disabled as of the alleged onset date;

1 the onset date was later amended to May 1, 1997. (AR 73.) In February, 2006, SSA notified
2 Plaintiff that it had determined that she was no longer disabled as of January, 2006 and that
3 her disability benefits would be terminated in March, 2006. (AR 106-107.) Plaintiff
4 requested reconsideration of SSA's decision. (AR 104.) Following a hearing on Plaintiff's
5 request for reconsideration, in May, 2007, the Agency reversed its findings and determined
6 that Plaintiff continued to be disabled. (AR 100.) Based on Plaintiff's testimony at the
7 hearing, however, SSA later determined that Plaintiff had engaged in substantial work
8 activity and was no longer eligible for benefits. (AR 96.) Plaintiff requested reinstatement
9 of benefits; that request was denied on April 23, 2008. (AR 93.) Plaintiff requested
10 reconsideration of the decision to deny her request for reinstatement. (AR 20.) On August
11 25, 2008, SSA issued notice of its decision to affirm cessation of Plaintiff's disability
12 benefits effective February 27, 2008. (AR 20.) Plaintiff requested a hearing. (AR 89.)

13      A hearing on Plaintiff's application was held on February 2, 2009 before
14 Administrative Law Judge ("ALJ") Lauren R. Mathon. (AR 26.) Plaintiff testified at the
15 hearing. (AR 20.) The ALJ also heard testimony from Plaintiff's mother and brother. (AR
16 24.) On April 8, 2009, the ALJ issued a decision denying Plaintiff's application. (AR 20-26)
17 Plaintiff filed a request for review, which the Appeals Council denied on February 2, 2010.
18 (AR 4-6.)

19      On February 24, 2010, Plaintiff filed a complaint in U.S. District Court, appealing the
20 Commissioner's final decision denying his application pursuant to 20 C.F.R. §§ 404.981,
21 416.1481. (Doc. No. 1.)

22 **2.   Claimant's Work History**

23      Plaintiff was born on February 19, 1959. (AR 192.) She has a high school education
24 and training in cosmetology. (AR 342.) Plaintiff has worked as a hairdresser, hostess and
25 waitress. (AR 342.) The administrative record includes evidence demonstrating that
26 Plaintiff received wages or income from 1987 through 2007. (AR 114-118.) In 2007,
27 Plaintiff earned $11,639.92. (AR 118.)

28

Plaintiff worked at Shear Performance from approximately February, 2007 until May, 2007, when she fell at work and was injured. (AR 229.) Beginning in July, 2007, Plaintiff worked part-time as a hairdresser at Cost Cutters. (AR 229.) In August, 2007, Plaintiff began working at Regis hair salon; evidence in the record indicates that Plaintiff was employed there until at least February, 2008. (AR 123-124.)

**3.     Plaintiff's Medical History**

Plaintiff claims that she suffers from bipolar disorder, back and neck pain, memory problems, numbness, a recent car accident and benign meningioma. (AR 23.)

On August 28, 2007, Dr. Jennifer Lin examined Plaintiff. Plaintiff reported to Dr. Lin that she had fallen at work and had received chiropractic treatment. (AR 534.) Plaintiff reported constant pain in her neck. Dr. Lin observed cervical neck sprain and sacroiliac joint tenderness bilaterally. (AR 534.)  Dr. Lin also noted that Plaintiff suffered from bipolar disorder and had been taking her medication regularly.

A September, 2007, MRI of Plaintiff's lumbar spine showed moderate changes at L4-5 and degenerative disc disease at L5-S1. (AR 539-40.) The MRI radiologist noted that "a left neural foraminal spondylotic protrusion ... may mildly affect the exiting left L5 nerve root" and marked disc desiccation at L4-L5.    (AR 540.)

In February, 2008, Dr. Lin noted that Plaintiff suffered from depression. (AR 526.) Dr. Lin observed abnormalities and tenderness in the lumbosacral spine, sacrum and iliolumbar region. (AR 525.)

In April, 2008, Dr. Yost, a consultative physician, examined Plaintiff. (AR 517-519.) Dr. Yost diagnosed Plaintiff with bipolar affective disorder and alcohol abuse in remission. (AR 518.) He opined that Plaintiff appeared well-stabilized on her medications and that she was able to manage benefits on her own behalf. (AR 519.) He also opined that Plaintiff's bipolar disorder would not impose any limitations over the next 12 months. (AR 519.)

In April, 2008, a non-examining state-agency physician determined that Plaintiff could perform a range of "light" work. (AR 495-502.)

On May 1, 2008, Plaintiff was treated at the emergency room following a minor traffic accident in which she was rear-ended. (AR 490.) She was diagnosed with neck and back sprain, right foot pain and right shoulder pain. The emergency room physician noted Plaintiff's history of chronic back pain. X-rays revealed mild degenerative arthritis in the cervical and thoracic regions of the spine. (AR 492.)

In May, 2008, Dr. Lin examined Plaintiff and observed some tenderness in her cervical spine as well as abnormalities in the lumbar/lumbosacral spine. Dr. Lin recommended ibuprofen and physical therapy.

On June 16, 2008, Dr. Lin treated Plaintiff for low back and neck pain. (AR 392.) Plaintiff reported that ibuprofen helped her pain "a lot." Dr. Lin noted that Plaintiff did not have limb weakness or tingling. Dr. Lin observed abnormalities in Plaintiff's cervical and lumbar/lumbosacral spine. Dr. Lin recommended that Plaintiff continue to take ibuprofen and continue her physical therapy.

On July 2, 2008, Dr. Lin treated Plaintiff for neck and shoulder pain. (AR 388). Plaintiff reported that she had been feeling manic in the days preceding the appointment. Plaintiff also reported some memory loss since her traffic accident. Dr. Lin reviewed x-rays which demonstrated no significant changes in Plaintiff's back or neck.

On July 16, 2008, a brain CT scan ordered by Dr. Lin revealed that Plaintiff had a brain tumor. (AR 398.)

On July 25, 2008, Dr. Lin reviewed the CT results with Plaintiff and recommended an MRI and follow-up with a neurosurgeon. Dr. Lin noted that Plaintiff continued to suffer back pain, depression and cervical strain. (AR 386.)

On July 29, 2008, Dr. Estes, a state agency physician, evaluated Plaintiff's mental condition. He opined that Plaintiff was moderately limited in the ability to understand and remember details instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday without interruption. (AR 430-432.) He found no other significant limitations in Plaintiff's abilities. He further opined that Plaintiff retained the ability to

understand, remember and carry out one- and two- step instructions and that Plaintiff could meet the basic mental requirements of competitive, remunerative, unskilled work on a sustained basis.

On August 8, 2008, Dr. Schroeder, a neurologist, examined Plaintiff and recommended surgery to remove Plaintiff's brain tumor. (AR 403.) Plaintiff's brain tumor was removed in August, 2008. (AR 883.)

On August 13, 2008, Dr. Lin examined Plaintiff and observed no abnormalities in her spine and normal affect. (AR 380.)

On September 13, 2008, Dr. Shroeder saw Plaintiff for post-operative follow-up. He observed that Plaintiff was a little tired and emotional but doing well physically. (AR 887.) At another post-operative follow-up on September 18, 2008, Dr. Schroeder observed that Plaintiff was continuing to do well and her fatigue had improved. (AR 886.)

On December 8, 2008, Dr. Lin examined Plaintiff and observed that Plaintiff was having headaches and some left arm weakness. (AR 851.) Dr. Lin recommended ibuprofen and physical therapy.

A follow-up MRI on December 18, 2008 revealed no residual recurrent tumor in Plaintiff's brain. (AR 881-882.)

On January 26, 2009, at her well woman examination of Plaintiff, Dr. Lin observed that Plaintiff's judgment, insight and memory were normal and that Plaintiff exhibited a calm mood and normal affect. (AR 848.)

On August 13, 2009, Dr. Rohen conducted a psychological evaluation of Plaintiff and completed a Medical Source Statement on Plaintiff's behalf. (1033-35.) Plaintiff scored a 27 out of 30 on the mini mental status exam. Dr. Rohen opined that Plaintiff suffered from moderate to severe bipolar disorder and generalized anxiety disorder. Dr. Rohen also opined that Plaintiff's psychiatric conditions would impact her ability to work, that Plaintiff's impairment was mild to moderate and that Plaintiff was capable of minor workplace changes.

On November 23, 2009, Plaintiff was again referred to Dr. Rohen as part of SSA's disability determination. (AR 893-897.) Plaintiff scored a 27 out of 30 on the mini mental

- 5 -

status exam. Dr. Rohen opined that Plaintiff suffered from moderate to severe bipolar disorder and generalized anxiety disorder. Dr. Rohen further opined that Plaintiff would not have difficulty in basic interactions with supervisors or coworkers and that Plaintiff was capable of minor workplace changes. (AR 897.)

Between August, 2008 and November 17, 2009, Plaintiff received treatment at CODAC Behavioral Health Services. (AR 857-882.) Plaintiff was diagnosed with bipolar disorder, alcohol dependence and nicotine dependence. (AR 864.) CODAC records indicate Plaintiff was taking Lamictal, a mood stabilizer. Her case manager reported that Plaintiff was classified as Seriously Mentally Ill due to her bipolar disorder. (AR 844.)

**4.     Plaintiff's Testimony**

At her February 2, 2009 hearing, Plaintiff testified that she normally does her own household cleaning, shopping and driving. (AR 1049-50.) She enjoys art and writing poetry. (AR 1065.) Plaintiff testified that her bipolar disorder was mostly stabilized by medication but that she was unable to work full time because of her chronic back pain. (AR 1054.) She testified that she has episodes of depression or manic episodes that prevent her from working. (AR 1054-55.) Plaintiff testified that she had recently had a relapse of alcohol abuse but was currently attending AA meetings. (AR 1056.) Plaintiff opined that she could sit for only a couple of hours without back pain. (AR 1061.) Plaintiff testified that she had weakness and pain in her arms as a result of her brain surgery. (AR 1063.) Plaintiff testified that she had worked part-time as a hairdresser for many years and that she limited the number of hours that she worked in order to continue to qualify for disability benefits. (AR 1084-1087.) Plaintiff further testified that she was searching for employment. (AR 1097.)

## **CLAIM EVALUATION**

Continued entitlement to Social Security disability benefits must be reviewed periodically. *See* 20 C.F.R. § 404.1594(a). A claimant's disability will be found to have ended if it is shown that medical improvement related to the claimant's ability to do work has occurred, and the claimant is currently able to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1594(a), (b)(3). Medical improvement is any decrease in the medical severity

of a claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled. *See* 20 C.F.R. § 404.1594(b)(1). A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the claimant's impairment(s). *See id.* Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity as defined in paragraph (b)(1), and an increase in the claimant's functional capacity to perform basic work activities. *See* 20 C.F.R. § 404.1594(b)(3).

A continuing disability evaluation consists of eight steps. At step one, the ALJ evaluates whether a claimant is engaging in substantial gainful activity. § 404.1594(f)(1). If so, then the claimant is no longer disabled and benefits will be terminated. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app 1, 20 C.F.R. § 404.1594(f)(2). If so, the disability will be found to continue. If not, the ALJ proceeds to step three of the analysis: whether there has been medical improvement in the impairment or impairments that were previously disabling. *See* 20 C.F.R. § 404.1594(f)(3). If the claimant has had medical improvement, the ALJ determines at step four of the analysis whether the medical improvement is related to the ability to work, *i.e.,* whether there has been an increase in the residual functional capacity[1] based upon the impairment(s) present at the time of the most recent favorable medical determination. *See* 20 C.F.R. § 404.1594(f)(4). If no medical improvement is shown or if medical improvement is not related to the ability to work, the ALJ proceeds to step five and examines whether certain exceptions apply. *See* 20 C.F.R. § 404.1594(f)(5). At step six, if medical improvement related to the ability to work is shown, the ALJ determines whether all of the

---

[1] Residual functional capacity is defined as that which an individual can still do despite her limitations. 20 C.F.R. § 404.1545.

- 7 -

claimant's current impairments in combination are "severe" such that they significantly limit the claimant's physical or mental ability to do basic work activities *See* 20 C.F.R. § 404.1594(f)(6). If not, the claimant is no longer disabled. If so, claim evaluation proceeds to the next step. At step seven, the ALJ evaluates whether the claimant is currently able to perform substantial gainful activity by performing his or her past relevant work in light of his or her residual functional capacity. See 20 C.F.R. § 404.1594(f)(7). If not, the ALJ proceeds to step eight, determining whether the claimant is currently able to perform substantial gainful activity by performing other work in light of his or her residual functional capacity. See 20 C.F.R. § 404.1594(f)(8).

## **THE ALJ'S FINDINGS**

The ALJ analyzed Plaintiff's claim of disability according to the eight-step procedure. At step one of the analysis, the ALJ found that Plaintiff had engaged in periods of substantial gainful activity between 1997 and 2007. (AR 22.) The ALJ noted that Plaintiff had worked as a hairdresser on a steady basis and had earned $11,639.92 in 2007, an amount exceeding the presumptive amount for SGA. (AR 22.) The ALJ determined that cessation of Plaintiff's benefits could be affirmed at step one of the analysis based on Plaintiff's work history, but went on to consider Plaintiff's medical records as well. At step two of the analysis, the ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment. (AR 23.) At step three of the analysis, the ALJ concluded that medical improvements had occurred. (AR 23.) At step four, the ALJ concluded that the medical improvements were related to Plaintiff's ability to work. The ALJ then concluded at step seven that Plaintiff had the residual functional capacity to perform light work, including her past relevant work as a hairdresser.

## **STANDARD OF REVIEW**

An individual is entitled to SSI disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a

1  continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). "A claimant will
2  be found disabled only if the impairment is so severe that, considering age, education, and
3  work experience, that person cannot engage in any other kind of substantial gainful work
4  which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993)
5  (quoting *Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

6  To establish a *prima facie* case of disability, the claimant must demonstrate an
7  inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th
8  Cir. 1984) (citing *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984)). Once the
9  claimant meets that burden, the Commissioner must come forward with substantial evidence
10 establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir.
11 1985).

12 The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
13 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported
14 by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016,
15 1019 (9th Cir. 1992) (citation omitted). The Commissioner's determination that a claimant
16 is not disabled must be upheld if the Commissioner applied the proper legal standards and
17 the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*,
18 894 F.2d 328, 330 (9th Cir. 1990) (citations omitted). Substantial evidence is defined as
19 "such relevant evidence as a reasonable mind might accept as adequate to support a
20 conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v.
21 Bowen,* 853 F.2d 643, 644 (9th Cir. 1987). The standard is "less than a preponderance" of
22 the evidence standard. *See Matney,* 981 F.2d at 1019.

23 "[I]f the evidence can support either outcome, the court may not substitute its
24 judgment for that of the ALJ." *Matney,* 981 F.2d at 1019. When applying the substantial
25 evidence standard, however, the court should not mechanically accept the Commissioner's
26 findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d
27 1154, 1156 (9th Cir. 1975). Reviewing courts must consider the evidence that supports as
28 well as detracts from the Commissioner's conclusion. *Id.* A denial of benefits will be set

- 9 -

1 aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician[2] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993) (citations omitted). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991)); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792-93 (9th Cir. 1997).

## **DISCUSSION**

Plaintiff challenges the ALJ's decision on six grounds: (1) Substantial evidence does not support the ALJ's finding that Plaintiff engaged in substantial gainful activity; (2) the ALJ did not follow the prescribed method in determining whether Plaintiff's mental impairment met or equaled a listed impairment; (3) the ALJ's finding that Plaintiff could

---

[2] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

perform her past relevant work as a hairdresser was not supported by substantial evidence; (4) the ALJ failed to properly evaluate Dr. Estes' July 2008 opinion; (5) the August, 2009 report of Dr. Rohen, submitted to the Appeals Council, demonstrates that the ALJ's decision is not supported by substantial evidence, and (6) the ALJ mischaracterized Plaintiff's MRI.

**1.    Substantial evidence does not support the ALJ's finding that Plaintiff engaged in substantial gainful activity**

At step one of the analysis, the ALJ found that Plaintiff had engaged in periods of substantial gainful activity between1997 and 2007, and therefore the cessation of Plaintiff's benefits could be affirmed on the ground that Plaintiff had completed a trial work period[3] and was able to work. *See* 20 C.F.R. § 404.1594(f)(1). Plaintiff contends that the ALJ erred in making this finding because it was not supported by an adequately developed record. The Magistrate agrees.

At step one of the analysis, the ALJ may affirm cessation of benefits upon a showing that the claimant is "currently engaging in substantial gainful activity." *See* C.F.R. § 40.1594(d)(5). The ALJ did not make any factual findings regarding work being performed by Plaintiff as of her February 27, 2008 cessation date. Instead, the ALJ noted that Plaintiff had "worked every year from 1997 through 2007 . . . worked as a hairdresser on a steady basis ... did not always have earnings at the SGA level . . . [and] earned $11,639.92 in 2007." (AR 22.)  The ALJ did not make any findings with respect to Plaintiff's "current" ability to work.  If the ALJ intended to presume Plaintiff's ability to work based on her earnings, the ALJ was required to evaluate Plaintiff's earnings over her period of work. *See* 20 C.F.R. §404.1574(b) (requiring ALJ to divide a claimant's earnings over the months worked and determine whether the average exceeds the amount set by regulation). The ALJ also failed to consider evidence suggesting that Plaintiff's 2007 earnings were the result of an "unsuccessful work attempt," *ie*. work lasting for a period of 6 months or less before the claimant's impairment forced him/her to stop working or to reduce the amount of work

---

[3] A trial work period is a period in which a claimant is permitted to attempt to return to work without losing his/her disability benefits. *See* 20 C.F.R. § 404.1592.

- 11 -

he/she performed such that his/her earnings from such work fall below the substantial gainful activity earnings level.

**2.    The ALJ did not follow the prescribed method in determining whether Plaintiff's mental impairment met or equaled a listed impairment**

When a claimant has a medically determinable mental impairment, the ALJ is required to rate the degree of the claimant's functional limitation by assessing four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation ("the B-criteria"). *See* 20 C.F.R. § 404.1520a(c)(3). The ALJ is required to rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), using a five-point scale: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). The ALJ is required to rate the degree of limitation in the fourth functional area (episodes of decompensation), using a four-point scale: none, one or two, three, four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ is also required to complete a standard document to record how the ALJ applied the technique. *See* 20 C.F.R. § 404.1520a(e).

At step two of the analysis, the ALJ found that Plaintiff's bipolar disorder was a medically determinable mental impairment, but that Plaintiff's mental impairment did not meet or equal the severity of a listed impairment. (AR 23.)   However, the ALJ did not engage in any of the analysis required by 20 C.F.R. § 404.1520a. With respect to Plaintiff's bipolar disorder, the ALJ noted only that:

> . . . claimant underwent another consultative psychological evaluation in which she was found to be stable on her medications; have no limitations expected to last 12 months; and have a GAD in the 71-80 range, which is consistent with an individual with no more than slight impairment in any area of psychological functioning ... CODAC notes August 2008 through January 2009 reflect stability in claimant's mental condition on her medication regimen with a GAF of 65, indicative of mild symptoms.

- 12 -

The ALJ then concluded "the claimant's impairments as of February 27, 2008, did not meet or medically equal a listing." The ALJ did not rate the degree of the claimant's functional limitation and does not appear to have completed the standard document required by 20 C.F.R. § 404.1520a(e).

**3.     The ALJ's finding that Plaintiff could perform her past relevant work as a hairdresser was not supported by substantial evidence**

"The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62; *see Pinto v. Massanari*, 249 F.3d 840, 844 n.3 (9th Cir. 2001) (Social Security Rulings and Acquiescence Rulings are binding on all components of the Social Security Administration). The ALJ must evaluate either: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See* SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. *See* SSR 82-62.

In the present case, the ALJ concluded, based on the medical records provided by Plaintiff's treating and examining physicians, that Plaintiff had the residual functional capacity to perform light work. (AR 24-25.) However, the ALJ failed to make any specific findings regarding the physical and mental demands of Plaintiff's past relevant work as a hairdresser, either as actually performed or as generally required. Generally, an ALJ looks to either the Dictionary of Occupational Titles ("DOT") or vocational-expert testimony for evidence of those demands. *See* SSR 00-4p; SSR 82-62; SSR 82-61. The ALJ did not cite

either the DOT or a vocational expert.[4]  In addition, pursuant to 20 C.F.R. § 404.1565, when evaluating a claimant's ability to perform past relevant work, the ALJ is required to ask the claimant about "the dates you worked, all of the duties you did, and any tools, machinery, and equipment you used . . . the amount of walking, standing, sitting, lifting and carrying you did during the work day, as well as any other physical or mental duties of your job." Review of the transcript indicates that the ALJ did not gather any information from Plaintiff during the hearing regarding Plaintiff's past relevant work as a hairdresser.  (AR 1044-1074.)

The Magistrate further notes that the ALJ failed to comply with  SSR 82-62's requirement that the ALJ make specific factual findings regarding the relation of the residual functional capacity to the past work.

**4.     The ALJ failed to properly evaluate Dr. Estes' July 2008 opinion**

As part of her analysis at step seven, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work.  The ALJ's conclusion was supported by Plaintiff's testimony, which the ALJ found not fully credible, the April, 2008 opinion of a non-examining state-agency physician (AR 495-502) and the opinions of treating and examining psychologists.  (AR 25.)  Plaintiff contends that the ALJ erred in failing to consider the July, 2008 opinion of Dr. Estes, a state agency physician who opined that Plaintiff retained the ability to understand, remember and carry out one- and two- step instructions and that Plaintiff could meet the basic mental requirements of competitive, remunerative, unskilled work on a sustained basis.  The Magistrate agrees.

Although an ALJ is not bound by findings made by State agency or other program physicians and psychologists, an ALJ may not ignore these opinions and must explain the weight given to the opinions in their decisions.  *See* SSR 96-6p.  The ALJ made no mention of Dr. Estes' conclusion that Plaintiff's residual functional capacity was limited to unskilled, rather than light work.  Thus, the ALJ did not satisfy the regulatory requirement that she

---

[4] Defendant suggests that the ALJ implicitly relied on the DOT at step seven of the analysis. (Doc. 16, pgs. 33-34.)  There is nothing in the ALJ's decision to support this assumption.

- 14 -

acknowledge the medical evidence and opinions of state agency physicians and explain the weight given to them.

**5.     The ALJ should consider the August, 2009 report of Dr. Rohen, submitted to the Appeals Council, on remand[5]**

Plaintiff contends that the August, 2009 report of Dr. Rohen, which was submitted to the Appeals Council, confirms that substantial evidence does not support the ALJ's residual functional capacity assessment. Dr. Rohen opined that Plaintiff was capable of adapting to minor workplace changes; Plaintiff contends that this opinion demonstrates that Plaintiff does not have the residual functional capacity to perform light work. The Appeals Council considered Dr. Rohen's report and concluded that it did not provide a basis for changing the ALJ's decision.

Where the Appeals Council considered evidence not previously presented to the ALJ, the Court may consider such evidence on review. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir.2007) (considering on appeal both the ALJ's decision and the additional material submitted to the Appeals Council); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.2000) (recognizing that "[w]e properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review" and remanding for further proceedings); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1449, 1452 ("we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."). However, the Court should decline to consider Plaintiff's argument that evidence submitted to the Appeals Council demonstrates that the ALJ's decision was not supported by substantial evidence. As stated in *Harman v. Apfel*, 211 F.3d at 1180:

---

[5] Plaintiff also argued that the Appeals Council failed to consider the November, 2009 report of Dr. Rohen. However, it does not appear that the November, 2009 report was ever submitted to the Appeals Council. (AR 7 (listing the additional evidence received by the Appeals Council)). *See Brown v. Astrue*, 2009 WL 2998938, *6 (D. Ariz. 2009) (district court may only consider evidence which was submitted to the Appeals Council).

- 15 -

> While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law. The appropriate remedy in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE may answer questions with respect to the additional evidence.

This Report and Recommendation concludes that this case should be remanded to the ALJ for further findings consistent with this opinion. On remand, the ALJ should also be instructed to consider the August, 2009 report of Dr. Rohen.

**6.      The ALJ did not mischaracterize Plaintiff's MRI.**

At step seven, in assessing Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff's testimony regarding the severity her back and neck pain was in conflict with the medical evidence because "claimant's treating and examining physicians consistently characterized the impairments as 'minimal,' 'mild,' 'slight,' 'normal' and 'unremarkable' with reference to the clinical and laboratory findings." (AR 25.) Plaintiff contends that this conclusion was not supported by substantial evidence because Plaintiff's September, 2007, MRI showed moderate changes at L4-5 and marked disc desiccation at L4-L5. (AR 539-40.)

The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney,* 981 F.2d at 1019. Although Plaintiff's MRI suggested moderate/marked abnormalities in Plaintiff's spine, there was substantial evidence to support the ALJ's findings that Plaintiff's back and neck pain was not as severe as she reported. Dr. Lin prescribed only ibuprofen for Plaintiff's back pain, and Plaintiff reported to Dr. Lin that ibuprofen helped "a lot." (AR 392.) In July, 2007, medical records document that Plaintiff's neck and back were "non-tender." (AR 551.) Dr. Lin observed that Plaintiff had a straight back with no costoverterbral angle tenderness on December 3, 2007. (AR 529.) A May 1, 2008 x-ray of Plaintiff's spine showed only "mild" degenerative arthritis in both the cervical and lumbar regions. (AR 492-93.) Plaintiff had no lumbar tenderness during a May, 2008 examination by Dr. Lin. (AR 395.) Dr. Lin also observed that Plaintiff's cervical spine was non-tender at examinations between June and

1 December, 2008. (AR 392, 385, 381, 854, 850.)   Because there is adequate evidence to
2 support the ALJ's conclusion that Plaintiff's neck/back pain was mild, the Court cannot
3 overturn the ALJ's decision on this ground.

## **RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order REMANDING for further proceedings consistent with this report.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to *de novo* review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 10-120-TUC-FRZ.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 4th day of November, 2010.

_____
Jennifer C. Guerin
United States Magistrate Judge